# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

### (609) 989-2182

CHAMBERS OF
**FREDA L. WOLFSON**
UNITED STATES DISTRICT JUDGE

Clarkson S. Fisher Federal Building &
U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

August 29, 2012

**LETTER MEMORANDUM
AND ORDER**

Gerald Allen Marks, Esq.
Marks & Klein
63 Riverside Ave.
Red Bank, NJ 07701

Edward Sponzilli, Esq.
Norris, McLaughlin, & Marcus, PA
721 Route 202-206 North
PO Box 5933
Bridgewater, NJ 08807-5933

Edward C. Barnidge, Esq.
Williams & Connolly LLP
725 12th St. NW
Washington, DC 20005

Alexander Bono, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196

### RE: Villano et al v. TD Bank et al (11-cv-6714)

Dear Counsel:

Presently before the Court are motions by both Defendant TD Bank ("TD Bank") and

Defendant NMTC, Inc., d/b/a Matco Tools ("Matco") and its parent Danaher Corporation

("Danaher") (collectively "Defendants").  First, TD Bank has filed a motion to dismiss Plaintiffs'

Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or alternatively to

1

compel arbitration.  Matco and Danaher have filed a motion to compel arbitration or alternatively

to transfer the claims against them to the Northern District of Ohio.  In addition, Matco and

Danaher have filed a motion to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6).  Plaintiffs

David B. Villano III ("Villano III" or "Son") and David B. Villano, Jr., the father of David B.

Villano III,  ("Villano Jr." or "Father") filed their three-count Verified Complaint on their own

behalf and on behalf of a putative class.  Until the putative class is certified, however, the action

is one between the named plaintiffs and defendants. See Rolo v. City Investing Co. Liquidating

Trust, 155 F.3d 644, 659 (3d Cir. 1998). Accordingly, the Verified Complaint must be evaluated

as to the named plaintiffs only. Id.  Plaintiffs' Complaint alleges as to all Defendants common

law fraud and civil conspiracy (Count I); and as to Defendant TD Bank a violation of the New

Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq. ("NJCFA") (Count II); and a violation of

the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349 et seq. ("DPA")

(Count III).  Plaintiffs' claims arise from a loan that Villano III obtained from TD Bank in order

to finance a Matco franchise. Matco sells specialty tools, mainly automotive tools.  Specifically,

Plaintiffs allege that Matco secretly supplied inflated income projections for Villano III's

franchise to TD Bank, which TD Bank accepted, despite the fact that it knew or should have

known that the loan to Villano III would likely never be repaid—even though it was, in reality,

repaid in full, by Villano Jr., five years before this case was brought.  Oral argument was held on

August 28, 2012.

## I.    FACTUAL BACKGROUND

In June 2004, Villano III sought to purchase a Matco Tools franchise to be operated on

Long Island, New York. Compl. ¶ 9. His father, Villano Jr., had been operating a Matco

distributorship for many years already although he apparently did not acquire it directly from

Matco.  Since Villano III did not have sufficient capital to finance the purchase, Matco required

him to obtain outside financing as a condition of signing the franchise agreement. Id. ¶ 10. Matco referred Villano III to TD Bank for the purpose of securing a Small Business Administration ("SBA") loan that would enable him to purchase the franchise. Id. Matco provided TD Bank with Villano III's business cash flow estimate and initial capital requirements, an analysis of a recapitalization of sources and use of funds, and a three-year annual income projection. Id. ¶ 10-12. The three-year projection was based on sales averages in the region where Villano III's franchise would be located. Compl. ¶ 12. Villano III and his father were never made aware of the existence of the three-year projection. Compl. ¶ 11. Despite never seeing this projection nor knowing of its existence, it is the cornerstone of Plaintiffs' fraud claim, in part because Plaintiffs allege that the distributorship agreement compelled the disclosure of this information.

On June 23, 2004, TD Bank approved a $103,000 SBA loan to Villano III. Compl. ¶ 11. As required by the loan agreement, the father, Villano Jr., signed a personal guaranty on July 23. Id. Plaintiffs were under the impression that TD Bank had considered only "legitimate financial material" in approving Villano III's loan. Compl. ¶ 19. Plaintiffs now allege that TD Bank's approval was principally based on the three-year projection supplied by Matco, Compl. ¶ 11, but that TD Bank was aware of the 'extraordinarily high failure rate' of SBA franchise loans. Compl. ¶ 17.

Plaintiffs allege that Matco instructed TD Bank not to disclose the projection to Villano III, as Matco cannot legally make representations regarding potential sales unless they are expressly set forth in the franchise offer to the prospective franchisee. Compl. ¶ 12. The franchise offer to Villano III expressly stated that Matco does not make any such representations. Id. Plaintiffs allege that TD Bank nevertheless knowingly participated in Matco's scheme, as it profits through loan origination fees and interest payments collected from SBA loans. Compl. ¶ 18.

In 2006, Villano III started having trouble making the loan payments, as his franchise was not performing as well as predicted by the three-year projection (which he admits he did not know about). Compl. ¶ 16. The Father paid off the $85,417.59 balance of the loan with his own savings. Id. This was significantly earlier than was required by the loan agreement.  Villano III continued to operate his franchise for four more years.  Then in 2010, Villano III closed his Matco franchise allegedly because of poor financial results. Id. Villano III has yet to fully repay his father for paying off the balance of the SBA loan. Id.  While the Plaintiffs make a number of general claims for damages, including punitive damages and attorneys' fees, the only damage expressly identified is the loan itself.

The Distributorship Agreement ("Agreement") was signed by Villano III and Matco, as a subsidiary of Danaher.  It contains an arbitration clause and a forum selection clause, both of which are relevant for this litigation.  The arbitration clause is found in §12.1 of the Agreement and provides in relevant part:

> Except as expressly provided in Section 12.5 of this Agreement, all breaches, claims, disputes and controversies ... between the Distributor, including its ... *guarantors* and Matco, including its ... agents ... and its *parent*, subsidiary or affiliated companies *arising from or related to* this Agreement, *the offer or sale* of the franchise ... [or] the relationship of Matco and Distributor, *including any allegations of fraud* ... will be determined exclusively by binding arbitration in accordance with the Rules and Regulations of the American Arbitration Association.

Agreement, § 12.1, Ex. A to Danaher Motion (emphasis added).  This clause references section 12.5, which provides that the following disputes are not subject to arbitration: those involving trademarks, trade names, and patents; termination of the agreement by Matco; or enforcement of covenants not to compete contained in the agreement.  No party argues that § 12.5 is implicated in this matter.  The Agreement also contains a forum selection clause, which states as follows:

> 12.9 <u>Venue and Jurisdiction</u>. All Arbitration hearings must and will take place exclusively in Summit County, Ohio. All court hearings, mediation hearings or

> other hearings initiated by either party against the other party must and will be venued exclusively in Summit County, Ohio. Matco and the Distributor, and were applicable their ... personal guarantors, do hereby agree and submit to personal jurisdiction in the Summit County, Ohio in connection with any Arbitration hearings, court hearings or other hearings, including any lawsuit challenging the arbitration provisions of this Agreement ... and do hereby waive any rights to contest venue and jurisdiction in the Summit County, Ohio and any claims that venue and jurisdiction are invalid.
>
> ...
>
> Notwithstanding this Article, any actions brought by either party to enforce the decision of the arbitrator may be venued in any court of competent jurisdiction.

Id. at § 12.9.  As I stated before, the Plaintiffs have brought this action on behalf of themselves and a putative class.  I note, however, that the Distributorship Agreement specifically excludes class actions as part of the arbitration.  Section 12.6 reads in part:

> No party except Matco, the Distributor and their officers Directors, shareholders, spouse, and personal guarantors (as applicable) will have the right to join in or become a party to any Arbitration proceeding arising under this Agreement and therefore the arbitrator will not be authorized to merit class actions (as defined in the Federal Rules of Civil Procedure) or to permit any person or entity that is not a party to the Agreement to be involved in or to participate in any Arbitration hearings conducted pursuant to this Agreement.

Id. at § 12.6.  The Supreme Court has held that class arbitration waivers are enforceable as a matter of law.  AT & T Mobility LLC v. Concepcion, -- US --, 131 S. Ct. 1740, 1749 (2011).

Finally, Danaher and Matco argue in the alternative that the claims against them should be severed and transferred to the U.S. District Court for the Northern District of Ohio.

## II.	DISCUSSION

Between them, Defendants have filed three motions and have raised three distinct issues: (1) whether this matter should be stayed and referred to arbitration; (2) whether Plaintiff's Complaint should be dismissed for failure to state a claim; or (3) whether the

claims against Matco and Danaher should be transferred to Ohio.  I will address the arbitration provision first, because as the Third Circuit has explained, should I grant Matco's arbitration request, then the proper course of action subsequent to that would to be to stay—not dismiss—the matter, pending arbitration. See Lloyd v. HOVENSA, LLC, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of [9 U.S.C.] § 3 . . . clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded.").

### 1.    Arbitration

The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"), directs federal courts to compel arbitration of claims "arising out of" a valid agreement to arbitrate.  The FAA reflects "the national policy favoring arbitration agreements." 9 U.S.C. § 2; Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S.Ct. 1204 (2006). Thus a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986); AT & T Mobility LLC v. Concepcion, -- US --, 131 S. Ct. 1740, 1749 (2011) ("[C]ourts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms."); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

First, Plaintiffs make an argument that the contract is unconscionable because Villano III was not free to negotiate its terms.  I am not convinced by the facts as they appear on the face of the pleadings.  Nothing compelled Villano III to enter into this agreement, he was given ample time to review the agreement before signing, and his

father, who had extensive experience with Matco, was the one who suggested Villano III begin his own distributorship.  Moreover, courts have rejected this same argument before. "Even if Plaintiffs' allegations that the Franchise Agreement was presented on a 'take-it-or-leave-it' basis and that the parties' were of unequal bargaining power are accepted as true, these are not sufficient grounds for this Court to find that the formation of the agreement was procedurally unconscionable."  Bonanno v. Quiznos Master LLC, No. 06-1415, 2006 U.S. Dist. LEXIS 85131, at *16 (D.N.J. Nov. 17, 2006).

Recent development of the law, in light of the Supreme Court's holding in Concepcion, 131 S. Ct. 1740 (2011), is instructive.  There, the Supreme Court overruled cases that had found class arbitration waivers unconscionable in consumer adhesion contracts because the "disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has ... deliberately cheat[ed] large numbers of consumers out of individually small sums of money."  Litman v. Cellco P'ship, 655 F.3d 225, 231 (3d Cir. N.J. 2011) (discussing Concepcion's overruling of the California Supreme Court opinion in Discover Bank v. Superior Court, 36 Cal. 4th 148 (Cal. 2005)).  After Concepcion, the Third Circuit found that similar New Jersey law did not control.  Id. ("Therefore, we must hold that, contrary to our earlier decisions in Homa and in this case, the rule established by the New Jersey Supreme Court in Muhammad is preempted by the FAA.").  In so doing, the Third Circuit explained that it "now endorse[s] the District Court's decision to reject New Jersey law holding that waivers of class arbitration are unconscionable."  Id. at 232.  If neither individual claims nor class arbitration waivers are unconscionable in the context of consumer adhesion contracts, when there is a clear disparity of bargaining power and when only small monetary amounts are at issue, then I am at a loss as to how the contract

here could be unconscionable when this was an arm's length negotiation to begin a

business relationship and where Plaintiffs took ten days to review the contract. See also

Bourgeois v. Nordstrom, Inc., 2012 U.S. Dist. LEXIS 2275 (D.N.J. Jan. 9, 2012) (finding

employee/employer adhesion contract where employee had no opportunity to negotiate

terms did not, by itself, make the contract unconscionable).  Therefore, I do not find that

the agreement to arbitrate is unconscionable.

> Turning now to the scope of the arbitration clause, it provides that:

> Except as expressly provided in Section 12.5 of this Agreement, all breaches, claims, disputes and controversies (collectively referred to as "breaches" or "breach") between the Distributor including its Spouse, shareholders, partners, or guarantors, and Matco, including its employees, agents, officers or directors, and its parent, subsidiary or affiliated companies arising from or related to this Agreement, the offer or sale of the franchise and distribution rights contained in this Agreement, the relationship of Matco and Distributor, or Distributor's operation of the Distributorship, including any allegations of fraud, misrepresentation, and violation of any federal, state or local law or regulation, will be determined exclusively by binding arbitration in accordance with the Rules and Regulations of the American Arbitration Association.

(TD Bank's Ex. A).  Therefore, the explicit terms of the clause broadly provide for arbitration if

there are: (1) claims related to the agreement; (2) claims related to the offer or sale of the

franchise; (3) claims related to the relationship of Matco and Villano III; or (4) claims related to

Villano III operating his distributorship.  Given its breadth, both Matco and TD Bank argue that

the clause encompasses all of Plaintiffs' claims, which concern both the offer and sale of the

franchise and the relationship between Villano III and Matco.

Largely ignoring the precedent cited by Defendants, the Villanos argue that the loan

agreement between them and TD Bank is wholly separate from the Distributorship agreement

and therefore the arbitration clause does not control.  But the loan and the distributorship are

inextricably linked.  It is impossible to parse out the two as separate, unrelated transactions.  The

arbitration clause covers claims related not only to the agreement, but to the relationship between

Matco and Villano III.  Plaintiffs' case is about how they were fraudulently induced to enter into

that relationship with Matco by first entering tino the allegedly fraudulently procured loan, all as

a result of collusion between Matco and TD Bank and in violation of the distributorship

agreement.  This is squarely within the contours of the arbitration clause.  The Third Circuit has

held that similar phrases such as "arising under" and "arising out of" are normally given broad

construction. Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000). The federal policy in

favor of arbitration is "particularly applicable" where the arbitration clause at issue is broad. Id.

at 725.  Considering the strong federal policy favoring arbitration, provisions such as the one

before me must be "generously construed" in favor of coverage.  Mitsubishi Motors Corp. v.

Soler Chrylser-Plymouth, Inc., 473 U.S. 614, 625 (1985); AT & T Technologies, 475 U.S. at 650

("Doubts should be resolved in favor of coverage").

 The arbitration clause is broad and specifically encompasses the agreement itself, the

relationship between Villano III and Matco, and the offer and sale of the distributorship to

Villano III.  While the loan agreement itself does not contain an arbitration agreement and is not

referenced in the distributorship agreement, it was the loan that initiated the relationship between

Villano III and Matco—without the loan there could have been no distributorship agreement or

arbitration provision.  Moreover, the arbitration agreement clearly covers fraud claims as well,

including in the formation of the relationship between Matco and Villano III through the offer

and sale.  Not only did Matco condition a franchise contract on Villano III's obtaining a loan

from a third-party bank, but Plaintiffs' claims all revolve around them allegedly being

fraudulently induced into accepting that loan.  Were it not for the contractual relationship

between Villano III and Matco, no loan would have existed into which Villano III would have

been fraudulently induced.  Other courts have similarly held that arbitration provisions can cover

financing directly related to the subject matter of the arbitration clause.  "Thus, the financing

resulted from the purchase, and was inextricably connected to that purchase.  Any reasonable

interpretation of the arbitration provision finds that it encompasses a dispute over the financing

that was necessitated by the sale of the subject automobile."  Ramey v. Burlington Car

Connection, Inc., No. 10-1445, 2010 U.S. Dist. LEXIS 113711, at *10-11 (D.N.J. Oct. 25, 2010)

(collecting cases in support).

      Moreover, Plaintiffs' claims rest on the premise that this supposed, secret income

projection should have been disclosed under the terms of the distributorship agreement,

specifically section 14.4.  Thus, Plaintiffs' case necessarily implicates the distributorship

agreement.  They cannot ignore some provisions and enforce others.  Fraudulent inducement

claims have been found to come within the ambit of arbitration provisions in similar cases.  See,

e.g., Battaglia, 233 F.3d at 724-25 (stating that a broad arbitration clause encompasses disputes

relating to the formation of the agreement); FCMA, LLC v. Fujifilm Recording Media U.S.A.,

Inc., 2010 U.S. Dist. LEXIS 79129, at *15-17 (D.N.J. Aug. 5, 2010) (finding that fraud and

conspiracy claims were "based on allegations that Defendants fraudulently induced it to enter the

Distributorship Agreement," shared "common core of operative facts and arguments," and "all of

the claims are within the scope of the arbitration provision").  Therefore, I find that Plaintiffs'

claims are subject to the arbitration clause.

      The second issue raised by Plaintiffs is whether non-signatories (Danaher, Villano Jr., and

TD Bank) can be bound by that agreement under traditional principles of contract and agency

law.  I will address each party in turn.

        *a.   Danaher*

      Danaher is the parent company of Matco and as such is specifically listed in the

arbitration clause.  While Plaintiffs dispute that Danaher is a party to the agreement, case law

suggests otherwise.  For example, in Comrey v. Discover Financial Services, Inc., a non-

signatory was entitled to compel arbitration where it was a subsidiary of the signatory-parent, and

the arbitration agreement provided that the signatory's rights and obligations "shall be binding

upon our ... subsidiaries." 806 F.Supp.2d 778, 785-86 (M.D. Pa. 2011).  The same reasoning

applies here, where the arbitration agreement explicitly includes Matco and "its parent."  This

broad language encompasses Plaintiffs' claims against Danaher and brings Danaher within the

ambit of the arbitration clause.  See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863

F.2d 315, 320-21 (4th Cir. 1988) ("When the charges against a parent company and its subsidiary

are based on the same facts and are inherently inseparable, a court may refer claims against the

parent to arbitration even though the parent is not formally a party to the arbitration agreement.");

Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1296 (3d Cir. 1996) (quoting same).  There are no

separate claims or allegations against Danaher.  Plaintiffs treat Matco and Danaher as the same

entity for all substantive purposes.  Therefore, I find that Danaher is subject to the arbitration

agreement.

### b.  Villano Jr.

Next, there is a question of whether Villano Jr. should be compelled to arbitrate his

claims.  Plaintiffs argue he is a non-signatory and not subject to the clause.  At the outset, I note

that the clause specifically bound "the Distributor, including its ... guarantors."  Courts have held

that when a clause includes a "guarantor" that person is subject to the arbitration agreement. See,

e.g., In re Roasters Corp.,  No. 98-8074C, 2000 WL 33673775, at *3 (Bankr. M.D.N.C. Oct. 6,

2000) (finding guarantor subject to arbitration where clause included language "controversies,

disputes, or claims arising between the franchisor and the franchisee, including its guarantors").

But Villano Jr. argues that he was not a guarantor for the purpose of the distributorship

agreement—instead only the loan agreement—and points to other provisions that refer to a

separate guarantor of the business itself.  These other provisions had not been produced by any

11

party in the briefing to the Court, but could illuminate the meaning of how the Agreement

defined "guarantor."  Nevertheless, I note that when Villano III and Matco signed the agreement,

the loan agreement had already been signed and this language could conceivably have been

understood by the parties as encompassing Villano Jr. as guarantor when considered in

connection with the broad language concerning the offer or sale of the distributorship and the

relationship between the parties.  In any event, the meaning of guarantor is not dispositive of this

issue.

Plaintiffs' counsel conceded that if the Court were to read the arbitration provision as

encompassing the loan agreement, that there is no question Villano III's claims against Matco

must be sent to arbitration.  Villano Jr.'s claims also "arise from" or are "related to" the franchise

agreement as he co-signed the loan agreement solely so that Villano III could purchase the Matco

franchise.  Indeed, Matco referred Villano III to TD Bank for the purpose of securing financing

for his Matco franchise. Villano Jr. had operated his own Matco distributorship for years.  The

allegations that form the basis of Villano Jr.'s claims are that Matco and TD Bank conspired to

induce Villano III into taking out a loan which they knew or should have known would fail.

These claims are derivative of Villano III's claims.  Because Villano Jr. is owed money by

Villano III, the loss in the first instance is between those two parties.  Villano Jr.'s claims against

other parties are cognizable, if at all, only by him standing in the shoes of his son; essentially

Villano Jr.'s claims are a subrogation of his son's claims against Defendants.  Claims derivative

of arbitrable claims are themselves subject to arbitration.  "[D]erivative claims should not entitle

[a Plaintiff] to maintain separate litigation in a forum that has been waived by the principal

beneficiary."  Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 938-39 (3d Cir. 1985),

*overruled on other grounds by* Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110

(3d Cir. 1993); Shapiro v. Baker & Taylor, Inc., 2009 U.S. Dist. LEXIS 48187, *41 (D.N.J. June

9, 2009) ("The derivative nature of this claim brings it within the arbitration provision's scope.").

It would be inconsistent with the federal policy in favor of arbitration to compel arbitration of

Villano III's claims but not Villano Jr.'s derivative claims—or to allow either of the parties to

escape the arbitration commitment by adding Villano Jr. as a Plaintiff.  Plaintiffs rely on Fit

Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1 (1st Cir. 2004) to argue otherwise.  I

do not find that case persuasive.  Not only are the facts dissimilar, but it is a First Circuit case

that is not binding on this Court.  Moreover, it was well before more recent case law, such as

Concepcion, that makes clear the wide berth courts are to give to arbitration provisions.

        Therefore, I find Villano Jr. is subject to the arbitration clause.  I note briefly that

Defendant Matco also argues that because Villano Jr. received a recruiting bonus for signing his

son up for a distributorship, he received a direct benefit from the agreement.  I am not necessarily

convinced by this argument, but do not need to decide it, because I have found that Villano Jr. is

subject to the arbitration agreement for other reasons.

                    *c.  TD Bank*

        On the other hand, TD Bank's position is different than that of either Danaher or Villano

Jr.  TD Bank did not sign the distributorship agreement, it is not closely related to any party that

did, nor is TD Bank included within the explicit language of the clause.  Two theories potentially

allow TD Bank to invoke the arbitration clause—either the third party beneficiary doctrine or the

doctrine of equitable estoppel—but neither is availing because TD Bank was neither a direct nor

an intended beneficiary of the distributorship contract nor did TD Bank knowingly exploit the

agreement or hold itself out as a party to the agreement. See E.I. DuPont de Nemours and Co. v.

Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 195 (3d Cir. 2001).  TD

Bank relies on the supposed "nexus test" from E.I. DuPont.  But no such test is articulated by the

Third Circuit in that case.  Rather, the opinion addresses whether a non-signatory can be

compelled to arbitrate because it was a third party beneficiary, an agent, or bound by the doctrine

of equitable estoppel if the non-signatory held itself out as a party to the agreement.  None of

these doctrines apply here.  Any benefit that TD Bank received from the loan agreement was not

a direct or intended result of the distributorship agreement itself.  To so hold would unwisely

stretch the contours of these doctrines and unfairly force parties to arbitrate merely because

contracts at issue were related irrespective of the relationship or status of the parties.  Finally, TD

Bank admitted it was not an agent of Matco.  Therefore, I do not find that TD Bank is subject to

the arbitration agreement.  I note that TD Bank has consented to arbitration, but that Plaintiffs

oppose.

      Considering that the remaining parties are subject to the arbitration agreement, however, I

will stay the case to allow those parties to seek arbitration in Summit County Ohio as to the

Plaintiffs' claims against Matco and Danaher.  The case against TD Bank will be stayed pending

the arbitration.  Were the arbitration to be held in New Jersey, I would compel it.  But because

the arbitration venue is outside this district, I am not authorized to do so.  9 U.S.C. Sec. 4 (stating

that a court is authorized to compel arbitration "within the district in which the petition for an

order direction such arbitration is filed"); Econo-Car International v. Antilles Car Rentals, 499

F.2d 1391, 1394 (3d Cir. 1974); Alpert v. Alphagraphics Franchising, 731 F. Supp. 685, 689

(D.N.J. 1990).  Therefore, the Court will stay the case pending the arbitration.

      **2.**      **Motion To Dismiss**

      In regards to TD Bank's motion to dismiss pursuant to Rule 12(b)(6), I have reviewed the

briefing and relevant case law.  I question the viability of Plaintiffs' claims and note the recent

NY case brought to the Court's attention by TD Bank dismissing nearly identical claims against

TD Bank by a distributor, who was also represented by Plaintiffs' counsel, although that case had

little substantive legal analysis.  I also believe it would be inappropriate for me to rule on the

motion to dismiss during the pendency of the arbitration.  Because the issues involved in TD

Bank's 12(b)(6) Motion are virtually identical to the issues that will be involved in the

arbitration, my ruling could significantly impact the arbitration, if not be dispositive of the issues

before the arbitrator.  As the Supreme Court has recognized, staying litigation among parties not

subject to arbitration provisions, as well as those that are subject to arbitration provisions, may be

a better course of action.  In Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,

21 n.23 (1983), the Court said "In some cases, of course, it may be advisable to stay litigation

among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left

to the district court…as a matter of its discretion to control its docket."  See, also, Mendez v.

Puerto Rican International Companies, Inc., 553 F.3d 709, 712 (3d Cir. 2009); Nissan World,

LLC v. Mkt. Scan Info. Sys., No. 05-2839, 2007 U.S. Dist. LEXIS 41066, at *21 (D.N.J. June 5,

2007).  In this District, courts will enter stays when there is "significant overlap…between parties

and issues."  Crawford v. West Jersey Health Sys., 847 F. Supp. 1232, 1243 (D.N.J. 1994)

(discussing cases).  Here, TD Bank is the only non-arbitrating party involved in the litigation, and

the issues involving it are the same as the underlying issues between Plaintiffs and Matco and

Danaher.  Therefore, this Court concludes that, in the interest of judicial economy and efficiency,

a stay pending arbitration is prudent as to claims involving TD Bank.

### 3.    Transfer

Matco argues in the alternative that venue is better placed in the Northern District of

Ohio.  It brings this argument only on its own behalf and does not argue for a transfer of the

entire case.  Both TD Bank and Plaintiffs oppose a transfer.  In particular, TD Bank argues that

the Northern District of Ohio would not have personal jurisdiction over it, thereby preventing the

Court from transferring the claims against TD Bank.  28 U.S.C. § 1391(b).  Because I am staying

the case to allow arbitration to proceed between Matco/Danaher and Plaintiffs, I will not decide

the issue of transferring the claims against Matco and Danaher.

### III.   CONCLUSION

For the reasons I have explained, Defendant Matco and Danaher's request for a stay of the litigation pending arbitration will be granted so that Plaintiffs' claims against those Defendants can be submitted to an arbitration to be held in Summit County, Ohio.  The entire litigation will be stayed, including Plaintiffs' remaining claims against TD Bank, until the resolution of that arbitration

Based on the above, as well as the Court having considered the briefing and the parties' orgal arguments on the record on August 28th, 2012, and for good cause shown, it is on this 29th day of August, 2012:

**ORDERED** that Defendants Matco and Danaher's Motion To Stay Pending Arbitration is **GRANTED** to allow the claims as between Plaintiffs and Matco and Danaher to be arbitrated as per the Distributorship Agreement;

**ORDERED** that Defendant TD Bank's Motion to Dismiss is **DENIED** with leave to refile after the completion of the arbitration;

**ORDERED** that Defendant Matco and Danaher's Motion to Dismiss is **DENIED** as moot; and

**ORDERED** that this case is administratively terminated with the right to reopen after the completion of the arbitration.

Very Truly Yours,
/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.